May Term,
1855.

ROSS
v.
THE LAFAY-
ETTE AND IN-
DIANAPOLIS
RAILROAD
COMPANY.

ROSS *v.* THE LAFAYETTE AND INDIANAPOLIS RAILROAD COMPANY.

The Circuit Courts under the constitution of 1851 were a continuation, in a somewhat modified form, of the Circuit Courts under the constitution of 1816. Suits in them were not abated by the constitution of 1851; and the former laws regulating the practice were continued in force until changed by legislation under the latter constitution, and governed the practice of the existing Circuit Courts.

A subscription of stock to a railroad company contained a provision that the stock subscribed should be paid in cash at such times and places as should thereafter be directed by the directors of the company, and should be applied to the construction of the road.

*Held,* that the subscription could not become payable until the directors, at a regular meeting, had fixed the time and place of payment.

*Held,* also, that it was not necessary to give notice to the subscriber of the time and place of payment.

APPEAL from the *Clinton* Circuit Court.

*Friday, June 1.*

PERKINS, J.—The *Lafayette and Indianapolis Railroad Company,* on the 29th of *September,* 1852, instituted suit against *Johnston Ross,* on a written instrument reading as follows:

" We, the undersigned, do hereby acknowledge ourselves indebted to the *Lafayette and Indianapolis Railroad Company,* on account of stock hereunto subscribed to said company, for the amounts by us respectively subscribed, to be paid in cash at such times and places as shall hereafter be directed by the directors of said company, and to be applied in the construction of the said railroad from *Lafayette* to *Indianapolis* in the state of *Indiana. Johnston Ross,* $200."

On the 8th of *February,* 1853, the parties appeared, and the defendant moved that the suit should be dismissed for want of jurisdiction in the Court; which motion being overruled, he pleaded the general issue, went to trial, and had judgment against him for the 200 dollars and interest.

The ground of the motion for a dismissal of the suit was, that the new constitution abolished the old Circuit Courts and abated the suits pending in them; provided no system of practice for the new Courts; and that, hence,

May Term, 1855.

Ross . v. The Lafayette and Indianapolis Railroad Company.

from the adoption of the new constitution to the coming into force of the judiciary act under that constitution, there were no Courts having jurisdiction, &c.

The Circuit Courts under the new constitution were a continuation, in a somewhat modified form, of the Circuit Courts under the old; suits in them were not abated by the new constitution; and the former laws regulating the practice were continued in force till changed by legislation under the latter constitution, and governed the practice of the existing Circuit Courts. The motion for dismissal was rightly overruled.

The only remaining objection to the judgment below is, that suit was commenced before legal notice was given that payment was required.

It appears that the board of directors, at a regular meeting subsequent to said subscription, entered an order upon their record-book, requiring payment at the office of the company in *Lafayette*, of 20 dollars of the amount subscribed, within sixty days after the 12th of *October*, 1848, and the remainder, in specified sums, at specified times, between the expiration of said sixty days and the first day of *April*, 1852; and published a notice of the order in a newspaper of general circulation in that section of the state, which was the only notice given. This notice the defendant below disregarded, if it came to his knowledge, paid nothing on his subscription, and, in *September*, 1852, after all the instalments became due, was sued and adjudged liable to pay the subscription.

His position is that he was entitled to personal notice from the company.

This question is to be determined upon the contract of subscription sued on. There is nothing in the charter of the company controlling it.

If that contract is, in effect, but a promise to pay upon demand, the suit itself constituted that, and no other was necessary. It is well settled that a suit will lie upon a promissory note for money payable on demand, without a previous special demand of payment; and upon a declaration on such a note simply averring a general demand,

May Term,
1855.

Ross
v.
The Lafay-
ette and In-
dianapolis
Railroad
Company.

proof of a special demand is not necessary.   See 1 Swan's Pr., 282.

The learned and eminent counsel for the defendant below, in his brief in this Court, admits this contract of subscription to be but a promise to pay upon demand. He says, "the undertaking to pay the instalments was like a promise to pay money on demand." Upon this admission we might let the case rest.

But we are not satisfied with this interpretation of the contract.   Here was a subscription to a corporation for the purpose of aiding the construction of a railroad, a work to be subsequently commenced, if at all, and only requiring payment of the subscription for its prosecution after it should be commenced.   This commencement would be, whenever it should take place, by order of the directors. Their action in the premises would determine the time when payment of the subscription would be necessary. Hence the contract stipulates that it shall be paid "as shall hereafter be directed by the directors of said company." Now, it seems to us that this direction was to be a condition precedent to the subscription becoming payable; and it would necessarily be made by the directors at a regular meeting of the board, the proceedings of which the stockholders would naturally inquire into.   It could be made in no other manner.   The contract does not stipulate that notice shall be given to the subscribers, but only that the board of directors shall fix the time when the stock shall be payable.   This is all the condition made, and that, we think, the board were bound to perform before suit.

There could be no very great necessity for notice; and to give it personally to the numerous and widely scattered stockholders every time a small instalment was called for, would be very expensive and troublesome, and, thus far, detrimental to the stockholders themselves, who, in the end, foot the bills; while, on the other hand, the road is the property of the stockholders; the directors are their agents, acting for them; the stockholders have a right to know and inspect their proceedings, and may well be sup-

posed to be sufficiently interested to induce them to do so. Under such circumstances, where they agree to pay their subscription at such times as the directors shall fix, without stipulating for notice, we think suit may be maintained without it.

In this case the proof showed that the directors had fixed the times, &c., and notice not being necessary, the suit was properly sustained. The judgment below will be affirmed.

*Per Curiam.*—The judgment is affirmed, with 5 per cent. damages and costs.

*I. Naylor*, for the appellant.

*R. C. Gregory* and *R. Jones*, for the appellees.